UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

GLENN CARSON MOORE,
  *Defendant-Appellant.*

No. 00-4136

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CR-98-68)

Submitted: December 21, 2000

Decided: January 11, 2001

Before WIDENER, LUTTIG, and MOTZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

Robert A. Ratliff, Cincinnati, Ohio, for Appellant. Janice McKenzie
Cole, United States Attorney, Anne M. Hayes, Assistant United States
Attorney, Banumathi Rangarajan, Assistant United States Attorney,
Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Glenn Carson Moore was convicted of interstate kidnapping (Count One); using and carrying a firearm during and in relation to a crime of violence (Count Two); transferring a handgun to a juvenile knowing the juvenile intended to use, possess, and carry it during the commission of a crime of violence (Count Three); unauthorized use of an access device (Count Four); and conspiracy to kidnap (Count Five). Moore was sentenced to life imprisonment on Counts One and Five; a consecutive five-year term on Count Two; and 120 years on Counts Three and Four, to run concurrently with the sentences on Counts One, Two, and Five. In his formal brief, Moore appeals his sentence, arguing that the district court should not have increased his offense level by two levels for his role in the offense. He challenges his convictions in his pro se supplemental brief. We affirm.

I

Moore and Redell Ivey, Jr. drove to a shopping mall in Fayetteville, North Carolina, intending to rob someone. They selected Kimberly Saunders because she was driving a nice car and they deduced that she would have money. Saunders parked her car and entered the mall. Moore parked his car next to Saunders' car, and he and Ivey waited until she returned from the mall. When Saunders approached her car, Ivey hit her between her eyes with his fist. Moore helped to pull her into his car. They left the mall, with Moore driving and Saunders and Ivey in the back seat. Saunders was lying down with a shirt over her face, and Ivey held a gun to her head.

Ivey rifled through Saunders' purse and gave Moore her credit cards and an ATM card. Moore threatened to have Ivey shoot her if she did not give them her PIN (personal identification number) so they could use the ATM card to obtain cash. Moore then drove to a number of ATM machines, where he attempted to retrieve cash. Apparently, he was able to withdraw approximately $500.

They drove to West Virginia, where Moore rented a motel room for the night. Saunders was forced to perform fellatio on both Ivey and

Moore. At one point, Moore vaginally raped Saunders while she was performing fellatio on Ivey. He subsequently raped her again. During the sexual assault, the gun was at all times near Ivey and Moore; at one point, Ivey held the gun to Saunders' head.

The next morning, Moore, Ivey, and Saunders went to a fast food establishment, drove to another ATM, and then went to a mall to shop, using Saunders' credit cards to buy some clothing and $1700 worth of jewelry. Additionally, Ivey purchased a pair of shoes with cash obtained through the use of her ATM card. At all times, Ivey was armed.

The three left the mall. Once it was dark, Moore instructed Saunders to remove all her clothing. Moore drove onto an unpaved road, stopped, and instructed Saunders to get out of the car. He had her sit on the ground and then kicked her in the face seven or eight times. Moore and Ivey then left. Naked, Saunders ran along the dirt road. She heard dogs barking and saw a man, who helped her to his home, where his wife called authorities.

Moore was convicted on all counts of the superseding indictment. At sentencing, the district court determined that Moore's offense level should be increased by two levels because he had functioned as an organizer, leader, manager, or supervisor. *U.S. Sentencing Guidelines Manual* § 3B1.1(c) (1998). Moore now challenges this enhancement.

## II

We review the district court's determination that Moore played an aggravating role in the offense for clear error. *United States v. Turner*, 198 F.3d 425, 432 (4th Cir. 1999), *cert. denied*, ___ U.S. ___, 68 U.S.L.W. 3630 (U.S. Apr. 3, 2000) (No. 99-8513). Here, the facts overwhelmingly demonstrate that Moore's role was that of a leader, organizer, manager, or supervisor. Moore recruited Ivey, asking him if he wanted to rob someone. He selected the victim and instructed Ivey how to accost her. Moore told Saunders that he would have Ivey shoot her if she failed to divulge her PIN number. Moore obtained money from various ATM's, using Saunders' card. It was Moore who rented the motel and controlled what happened in the room. For instance, he instructed Ivey to cut a towel up so that Saunders could

be bound and gagged. Moore instructed Ivey to have Saunders perform oral sex on Ivey. After raping Saunders, Moore struck her and asked her, "Who's in charge?" Clearly, he considered himself to be in charge. There was no clear error in enhancing Moore's offense level for his role in the offense.

### III

Moore has filed a supplemental pro se brief in which he claims that he was denied the right to fully cross-examine the witnesses against him and that his motion for a continuance was improperly denied. We find no merit to those claims.

### IV

We accordingly affirm Moore's convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*